

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00317-CV

———————————————

MAYPHOUS COLLINS AND AKILAH COLLINS, Appellants

V.

LESHA STRAUSZ AND PLANO COLLISION CENTER, INC. D/B/A
AUTONATION COLLISION CENTER PLANO, Appellees

---

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-305020-18

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellants Mayphous Collins and Akilah Collins sued Appellees Lesha Strausz and Plano Collision Center, Inc. d/b/a AutoNation Collision Center Plano for alleged damages to Appellants' custom 2016 Tesla Model X P90D. Both Strausz and AutoNation filed for no-evidence and traditional summary judgment on each of Appellants' claims, and the trial court granted summary judgment in favor of Strausz and AutoNation. In two issues, Appellants challenge the trial court's grants of summary judgment. We will affirm.

### II. BACKGROUND

In 2016, Appellants purchased the Tesla for $160,266.97. Two years after that purchase, Strausz rear-ended the Tesla while it was stopped at a red light.[1] Mr. Collins spent weeks researching Tesla-certified and Tesla-approved repair shops, and he eventually chose AutoNation, bringing the vehicle in for repairs six weeks after the wreck. The Tesla remained at AutoNation for over five months, and when Mr. Collins arrived to pick up the vehicle, he noticed that it had allegedly sustained damages that had not been present when he had brought it to AutoNation. According to Mr. Collins, he noticed certain cosmetic damages to the vehicle, and more importantly, he contended that the vehicle had sustained water damage. Four

---

[1]Mr. Collins was the Tesla's driver at the time of the wreck.

months later, Mr. Collins had the Tesla towed to his home, and he has not driven it since that time. Around the time that the vehicle was towed to Mr. Collins's home, AutoNation presented him with a final bill for the repairs totaling $7,777.88. The parties do not dispute that Strausz's insurance carrier paid for that final bill.

Appellants later filed suit against Strausz and AutoNation alleging the following claims: (1) breach of a bailment agreement; (2) negligent and fraudulent misrepresentation; (3) violation of the Deceptive Trade Practices and Consumer Protection Act (the DTPA); and (4) negligence and negligence per se.[2] As to damages, Appellants alleged that the Tesla was "a total loss." They stated that they were entitled to "the cost to replace the Vehicle with a vehicle of like[] kind[] and quality—which would be best determined by replacement with another 2016 Tesla Model X P90D, in the same condition as the Vehicle immediately prior to the [car wreck with Strausz]." They alleged that in total-loss situations, the depreciation of a vehicle would typically be deducted from the replacement cost, but they argued that a custom car, like their Tesla, "may actually appreciate in value." They also stated that because the Telsa was a unique custom good, its value also included "service

---

[2]For simplicity, we will refer to Appellants' negligence and negligence per se claims collectively as Appellants' "negligence claim." *See Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. App.—El Paso 2015, no pet.) ("Negligence *per se* is not a separate cause of action independent of a common-law negligence cause of action."); *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action.").

value[,] . . . sentimental value[,] . . . and intrinsic value." Appellants maintained that their total-loss damages should be valued "at a minimum" of $160,266.97—the amount that they paid when they had purchased the vehicle in 2016. Appellants also sought damages relating to their purported payment for a rental vehicle that was utilized while their Tesla was being repaired.

Strausz filed a no-evidence and traditional motion for summary judgment on each of Appellants' claims. The trial court granted summary judgment in Strausz's favor on Appellants' bailment, negligent and fraudulent misrepresentation, and DTPA claims, but the trial court denied summary judgment on Appellants' negligence claim. AutoNation also filed a no-evidence and traditional motion for summary judgment on each of Appellants' claims. The trial court granted summary judgment in AutoNation's favor on each of Appellants' claims. Appellants moved for the trial court to reconsider that ruling, arguing that new testimony from their expert, Kevin Newsom, warranted setting aside the summary-judgment ruling. The trial court denied Appellants' motion to reconsider.[3]

Strausz later filed a no-evidence and traditional motion for summary judgment on Appellants' remaining negligence claim. The trial court granted Strausz summary judgment on that claim, and the trial court signed a final judgment. Appellants asked

---

[3]In its order denying Appellants' motion to reconsider, the trial court corrected a statement made in its prior order granting AutoNation summary judgment. The prior order had stated that it was final and that it disposed of all parties. In the new order, the trial court made clear that the negligence claim against Strausz remained.

the trial court to reconsider that ruling, citing testimony from Newsom that was not included in their response to Strausz's motion for summary judgment on the negligence claim. The trial court denied Appellants' motion to reconsider, and this appeal followed.

## III. DISCUSSION

In their first issue, Appellants argue that the trial court erred by granting summary judgment in Strausz's favor. In their second issue, Appellants argue that the trial court erred by granting summary judgment in AutoNation's favor.

### A. Standard of Review

When a party moves for both no-evidence and traditional summary judgment, we first review the trial court's summary judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under that standard, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## B. The Summary Judgment in Favor of Strausz

### 1. Claim for Breach of Bailment Agreement

In their petition, Appellants alleged that Strausz had breached a bailment agreement. To prove a bailment—something necessary to sustain a claim for breach of a bailment agreement—a plaintiff must establish the following: (1) the delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that the property will be returned to the transferor. *DeLaney*

6

*v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.); *Sears, Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 168–69 (Tex. App.—Fort Worth 1998, no pet.).

In her no-evidence motion, Strausz argued that Appellants had no evidence to support any of the four elements required to prove the existence of a bailment. In their response, Appellants did not produce any evidence to support those challenged elements. Indeed, in the section of their response addressing the bailment claim—a section that was just over one page in length—Appellants merely responded to an argument made in Strausz's traditional motion for summary judgment regarding whether she could be held liable for the actions of her insurance carrier; Appellants said nothing about the elements challenged in Strausz's no-evidence motion. Appellants' response did not point us to any evidence raising a genuine, material issue of fact as to the challenged elements, and having reviewed the evidence attached to their response, we have found none.[4]

Examining the entire record in the light most favorable to Appellants and indulging every reasonable inference and resolving any doubts against the motion,

---

[4]Appellants attached to their response the following: (1) a "Texas Peace Officer's Crash Report" of the car wreck with Strausz; (2) excerpts from Strausz's deposition relating to the day of the wreck; (3) excerpts from Mr. Collins's deposition relating to issues with the Tesla following the wreck and following his taking of the vehicle to AutoNation for repairs; and (4) an affidavit from Mrs. Collins declaring that the statements contained in the factual background section of the response—none of which concerned the challenged bailment elements—were true and correct.

Appellants failed to produce summary-judgment evidence raising a genuine issue of material fact on the four elements required to prove the existence of a bailment. *See* Tex. R. Civ. P. 166a(i); *DeLaney*, 272 S.W.3d at 839; *Sears, Roebuck & Co.*, 963 S.W.2d at 168–69. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of Strausz on Appellants' claim for breach of a bailment agreement. We overrule this portion of Appellants' first issue.

### 2. Misrepresentation Claims

In their petition, Appellants alleged that Strausz, by and through her agent, made negligent and fraudulent misrepresentations to them concerning the repair of the Tesla. To prevail on a negligent-misrepresentation claim, a plaintiff must establish the following: (1) the defendant, in the course of his business, profession, or employment, or in another transaction in which he had a pecuniary interest, supplied to the plaintiff false information for guidance in a business transaction; (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relied on the information; and (4) the defendant's negligent misrepresentation proximately caused the plaintiff to suffer pecuniary loss. *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 760 n.9 (Tex. App.—Fort Worth 2012, pet. denied). To prevail on a fraudulent-misrepresentation claim, a plaintiff must establish the following: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

8

positive assertion; (4) the speaker made the representation with the intent that the plaintiff act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Cent. Petroleum Ltd. v. Geosci. Res. Recovery, LLC*, 543 S.W.3d 901, 921 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

In her no-evidence motion, Strausz argued that Appellants had no evidence that she had made any representations to them and no evidence that they had relied on any representations. In their response, Appellants did not produce any evidence to support those challenged elements. Rather, Appellants pointed to statements made in their petition to support their misrepresentation claims. Pleadings, even if sworn to, do not constitute summary-judgment proof. *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995).

Examining the entire record in the light most favorable to Appellants and indulging every reasonable inference and resolving any doubts against the motion, Appellants failed to produce summary-judgment evidence raising a genuine issue of material fact that Strausz had made a representation to them and that they had relied on said representation. *See* Tex. R. Civ. P. 166a(i); *Cent. Petroleum Ltd.*, 543 S.W.3d at 921; *Maddox*, 361 S.W.3d at 760 n.9. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of Strausz on Appellants' negligent and

fraudulent misrepresentation claims. We overrule this portion of Appellants' first issue.

### 3. DTPA Claim

In their petition, Appellants alleged that Strausz, by and through her agent, violated the DTPA. To prevail on a DTPA claim, a plaintiff must establish the following: (1) he is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant committed a wrongful act by engaging in a false, misleading, or deceptive act that is enumerated in a subdivision of Texas Business and Commerce Code Section 17.46(b), breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (4) that the act constituted a producing cause of the plaintiff's damages. *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 725 (Tex. App.—El Paso 2011, no pet.); *see* Tex. Bus. & Com. Code Ann. §§ 17.41– 17.63.

In her no-evidence motion, Strausz argued that Appellants had no evidence that they were consumers, that she could be properly sued under the DTPA, or that she had committed any wrongful act. In their response, Appellants did not produce any evidence to support those challenged elements. Once again, Appellants pointed to statements that they had made in their petition to support their claim. As noted above, pleadings do not constitute summary-judgment proof. *Laidlaw*, 904 S.W.2d at 660.

Examining the entire record in the light most favorable to Appellants and indulging every reasonable inference and resolving any doubts against the motion, Appellants failed to produce summary-judgment evidence raising a genuine issue of material fact that they were consumers, that Strausz could be properly sued under the DTPA, and that Strausz had committed any wrongful act. *See* Tex. R. Civ. P. 166a(i); *Godfrey*, 356 S.W.3d at 725. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of Strausz on Appellants' DTPA claim. We overrule this portion of Appellants' first issue.

### 4. Negligence Claim

In their petition, Appellants alleged that Strausz was negligent. To prevail on a negligence claim, a plaintiff must establish the following: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 680 (Tex. App.—Fort Worth 2015, no pet.).

In her no-evidence motion solely on Appellants' negligence claim, Strausz argued that Appellants had no evidence to support their damages. In their response, Appellants argued that they were under no obligation to prove the amount of their damages. While it is true that uncertainty as to the amount of damages is not fatal to recovery, lack of evidence or uncertainty as to the fact of damages is. *Avery Pharms., Inc. v. Haynes & Boone, L.L.P.*, No. 2-07-317-CV, 2009 WL 279334, at *7 (Tex. App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op.) (per curiam); *Bingham v. Sw. Bell Yellow*

11

*Pages, Inc.*, No. 2-06-229-CV, 2008 WL 163551, at \*6 (Tex. App.—Fort Worth Jan. 17, 2008, no pet.) (mem. op. on reh'g).  Damages must be ascertainable in some manner other than by mere speculation or conjecture and by reference to some fairly definite standard, established experience, or direct inference from known facts.  *Avery Pharms.*, 2009 WL 279334, at \*7; *Bingham*, 2008 WL 163551, at \*6.  Remote damages—those damages that are purely conjectural, speculative, or contingent—are too uncertain to be ascertained and cannot be recovered.  *Avery Pharms.*, 2009 WL 279334, at \*7; *Bingham*, 2008 WL 163551, at \*6.

Here, Appellants sought total-loss damages.[5]  When a total loss has occurred, the appropriate measure of damages is "'the fair market value of the [vehicle] immediately before the injury at the place where the injury occurred,' subject to a credit or offset, equal to the vehicle's salvage value, if the owner retains the vehicle."  *Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 628 (Tex. App.—Austin 2017, pet. denied) (quoting *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 657 (Tex. 2016)).

---

[5]Both Strausz and AutoNation argued below and argue here that Appellants cannot recover total-loss damages as a matter of law because, according to them, only insurance companies have the right to declare a vehicle a total loss.  *See Morrison v. Campbell*, 431 S.W.3d 611, 617 (Tex. App.—Fort Worth 2014, no pet.) ("An insurer may declare a vehicle to be a 'total loss' when it would not be absolutely impossible to repair it, but the damages are so extensive that repair would not be economically feasible.").  Appellants argued below and argue here that parties other than insurance companies may declare a vehicle a total loss.  We need not address this issue because even if total-loss damages were appropriate, Appellants did not produce evidence to support those damages.

In their response to Strausz's motion for summary judgment solely on their negligence claim, Appellants did not produce any evidence relating to the Tesla's fair market value immediately before the wreck at the place where the wreck had occurred. *See id.* Nor did they produce any evidence relating to a credit or offset equal to the vehicle's salvage value. *See id.* The closest Appellants came to providing such evidence was that they referenced their petition, which contained a statement that they had purchased the vehicle for $160,266.97 in 2016. But again, statements in pleadings are not proper summary-judgment evidence, and even if they were, the fact that Appellants had purchased the vehicle for $160,266.97 in 2016 is no evidence bearing on the vehicle's fair market value immediately before the 2018 wreck.

In their appellate brief, Appellants also refer us to deposition testimony provided by their expert, Newsom, in support of their damages. The bulk of Newsom's testimony was not attached to Appellants' summary-judgment response;[6] rather, Newsom's testimony was attached to their motions to reconsider the trial court's summary-judgment rulings. The scope of our review is limited to the summary-judgment record upon which the trial court's ruling was based. *Chappell v. Allen*, 414 S.W.3d 316, 321 (Tex. App.—El Paso 2013, no pet.). Here, Newsom's

---

[6]A couple of pages of Newsom's deposition were attached to Appellants' response to Strausz's motion for summary judgment solely on their negligence claim. None of that evidence, however, concerned the fair market value of the Tesla immediately before the wreck at the place where the wreck had occurred, nor did it concern the Tesla's salvage value.

testimony that was attached to Appellants' motions to reconsider was not included in the summary-judgment record because it was not filed with their summary-judgment response, and there is no indication in the record that the trial court granted leave to consider it. *See* Tex. R. Civ. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."); *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 374 (Tex. App.—San Antonio 1999, pet. denied) ("Late[-]filed evidence is a nullity unless the record affirmatively shows the trial court's acceptance of the late filing."). Thus, we do not consider Newsom's testimony that was attached to Appellants' motions to reconsider. Even if we did, Newsom's testimony did not concern the fair market value of the Tesla immediately before the wreck at the place where the wreck had occurred, nor did it concern the Tesla's salvage value.

In their petition, Appellants also sought damages relating to the Tesla's "service value[,] . . . sentimental value[,] . . . and intrinsic value" and damages relating to their purported payment for a rental vehicle that was utilized while their Tesla was being repaired. In their summary-judgment response, Appellants did not point us to any evidence of the Tesla's "service value[,] . . . sentimental value[,] . . . and intrinsic value," and having reviewed the evidence attached to their response, we have found none. In their summary-judgment response, Appellants also did not point us to any evidence relating to their purported payment for a rental vehicle. In our review of the

14

summary-judgment evidence, however, we did find the following excerpt from Mr. Collins's deposition concerning a rental car:

> Q. So did you actually rent a car when your vehicle was at AutoNation?
>
> A. The rental car was provided by [Strausz's insurance carrier].
>
> . . . .
>
> Q. Have you paid any rental expense because of this accident?
>
> A. Yes, I have.
>
> Q. And to whom did you pay it?
>
> A. Enterprise Rental Car.
>
> Q. How much did you pay?

The summary-judgment record does not contain a response to that question, nor does it provide any other details from which we can ascertain Appellants' purported damages stemming from their payment for a rental vehicle. We thus are left with less than a scintilla of probative evidence regarding those alleged damages.

Examining the entire record in the light most favorable to Appellants and indulging every reasonable inference and resolving any doubts against the motion, Appellants failed to produce summary-judgment evidence raising a genuine issue of material fact to support their damages. *See* Tex. R. Civ. P. 166a(i); *Balderas-Ramirez*, 537 S.W.3d at 628. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of Strausz on Appellants' negligence claim. We overrule

this last portion of Appellants' first issue. Having overruled all portions of Appellants' first issue, we overrule that issue in its entirety.

## C. The Summary Judgment in Favor of AutoNation

Appellants brought the same claims against AutoNation as they did against Strausz: (1) breach of a bailment agreement; (2) negligent and fraudulent misrepresentation; (3) violation of the DTPA; and (4) negligence. Damages are an element of each of those claims. *See Cent. Petroleum Ltd.*, 543 S.W.3d at 921 (stating that damages are an element of a fraudulent-misrepresentation claim); *Wise Elec.*, 476 S.W.3d at 680 (stating that damages are an element of a negligence claim); *Maddox*, 361 S.W.3d at 760 n.9 (stating that damages are an element of negligent-misrepresentation claim); *Godfrey*, 356 S.W.3d at 725 (stating that damages are an element of a DTPA claim); *Carter v. Flowers*, No. 02-10-00226-CV, 2011 WL 4502203, at *3 (Tex. App.—Fort Worth Sept. 29, 2011, no pet.) (mem. op.) (stating that damages are an element of a claim for breach of a bailment agreement). In its motion for summary judgment, AutoNation argued that Appellants had no evidence to support their damages.

Just as they failed to produce evidence to support their total-loss damages in response to Strausz's motion for summary judgment, Appellants failed to produce evidence to support their total-loss damages when responding to AutoNation's motion for summary judgment. Instead, they simply attached to their response the following: (1) a "Texas Peace Officer's Crash Report" of the car wreck with Strausz;

(2) excerpts from Strausz's deposition relating to the day of the wreck; (3) an excerpt and an exhibit from Mr. Collins's deposition concerning issues with the Tesla and discussions with AutoNation's personnel regarding the Tesla; and (4) an excerpt from the deposition of AutoNation's corporate representative concerning the storage of vehicles by AutoNation. None of that evidence relates to the Tesla's fair market value immediately before the wreck at the place where the wreck had occurred, nor does it relate to the Tesla's salvage value. *See Balderas-Ramirez*, 537 S.W.3d at 628.

Appellants contend that we should look at Newsom's deposition testimony that was attached to their motions to reconsider in deciding whether summary judgment was properly granted to AutoNation. But again, our review is limited to the summary-judgment record upon which the trial court's ruling was based. *Chappell*, 414 S.W.3d at 321. And here, Newsom's testimony that was attached to Appellants' motions to reconsider was not included in the summary-judgment record because it was not filed with their summary-judgment response, and there is no indication in the record that the trial court granted leave to consider it. *See* Tex. R. Civ. P. 166a(c); *Basin Credit Consultants*, 2 S.W.3d at 374. Thus, we do not consider Newsom's testimony that was attached to Appellants' motions to reconsider. And as stated above, even if we did consider it, Newsom's testimony did not concern the fair market value of the Tesla immediately before the wreck at the place where the wreck had occurred, nor did it concern the Tesla's salvage value. Thus, Newsom's testimony does not raise a genuine, material fact issue on Appellants' total-loss damages.

As it relates to Appellants' alleged damages concerning the Tesla's "service value[,] . . . sentimental value[,] . . . and intrinsic value," Appellants did not point us to any evidence of those values in their response to AutoNation's motion, and having reviewed the evidence attached to Appellants' response, we have found none. As it relates to Appellants' alleged damages stemming from their payment for a rental vehicle, Appellants did not point us to any evidence concerning those damages. In our review of the summary-judgment evidence, however, we did find an email exchange between an AutoNation representative and Mr. Collins where the AutoNation representative stated that he needed Mr. Collins to sign and return an attachment "to get [Mr. Collins's] rental bill moved to us" and that AutoNation would "only be covering $35/day for the rental." The summary-judgment record does not contain the attachment that Mr. Collins was asked to sign and return, nor does it provide any other details from which we can ascertain Appellants' purported damages stemming from their payment of a rental vehicle. We thus are left with less than a scintilla of probative evidence regarding those damages.

Examining the entire record in the light most favorable to Appellants and indulging every reasonable inference and resolving any doubts against the motion, Appellants failed to produce summary-judgment evidence raising a genuine issue of material fact to support their damages. *See* Tex. R. Civ. P. 166a(i); *Balderas-Ramirez*, 537 S.W.3d at 628. Accordingly, we hold that the trial court did not err by granting

18

summary judgment in favor of AutoNation on each of Appellants' claims. We thus overrule Appellants' second issue.

## IV. CONCLUSION

Having overruled both of Appellants' issues, we affirm the trial court's summary judgments.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  September 9, 2021